**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re:                                                      :
                                                            :   Chapter 13
DAISY M. PAULINO,                                           :
                                                            :   Case No. 14-11732 (ALG)
                              Debtor.                       :
------------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

### FACTS

The Debtor in this chapter 13 case, Daisy M. Paulino ("Debtor"), was president of Caribbean Express Corp. ("Caribbean"). On or about August 16, 2007 she signed an agreement with Memo Money Order of New York, Inc. ("Memo") for the purchase of money orders that Caribbean sold to the public. The two-page form agreement ("Agreement") is entitled "Personal Money Order Trust Agreement" and was between Memo and the "individual(s) and/or entities identified below, hereinafter referred to as Trustee(s)." It appointed "Trustee" to act as "special agent for MEMO" for the sale of money orders (¶ 1), and it obligated "Trustee" to hold in trust blank money orders as well as "all money received by Trustee from the sale of money orders, including without limitation the money order fees established by MEMO from time to time."(¶ 2) The Agreement has, in addition to a signature line for Memo, signature lines written in the following manner:

    TRUSTEE

    Corporate/Store Name _s/Caribbean Express Corp.
    Signature  Daisy Paulino_____    Title President_____
    Trustee Signature (Individual)  Daisy Paulino_____

In addition to the Personal Money Order Trust Agreement, Caribbean (by Paulino but not Paulino individually) signed an Addendum for "Agents with New York State Locations" authorizing "Trustee to act as its agent to issue and sell money orders and no other money transmission activity as an agent of MEMO is authorized…"  Caribbean also signed a "Personal Money Order Trust Agreement" relating to remittance by electronic funds transfer and granted irrevocable consent to the New York Superintendent of Banking to have access to its books and records relating to the sale and issuance of Memo money orders.  Finally, Daisy Paulino signed a long-form guarantee in which she personally guaranteed "Trustee's full performance" of the Personal Money Order Trust Agreement.

Memo alleges and the Debtor has not disputed that certain payments were not made to Memo and that, as of September 3, 2012, $48,499.33 was due and owing to Memo.  On December 28, 2012, Memo commenced an action against the Debtor and Caribbean in the Supreme Court of the State of New York, County of New York, to recover this amount.  The State court papers do not appear to be in the record, but Memo asserts that on July 24, 2013, the State court was about to enter a default judgment in connection with the State action.  On that date, the Debtor filed *pro se* a bankruptcy petition under chapter 7 of the Bankruptcy Code (case no. 13-12404), staying further action against her in the State proceedings. She subsequently voluntarily converted her chapter 7 case to chapter 13, but failed to file a plan or tender plan payments to the chapter 13 Trustee. On April 3, 2014, having apparently retained counsel, the Debtor filed a motion to voluntarily dismiss her *pro se* filing; two months later, on June 5, 2014, by and through her counsel, she filed a second voluntary petition for relief under chapter 13 of the Bankruptcy Code.

Since § 362(c)(3) of the Bankruptcy Code provides that a debtor loses the protection of the automatic stay after 30 days in a case filed within 12 months of the dismissal of an earlier proceeding, the Debtor timely filed a motion to extend the automatic stay past the thirty-day period. Memo objected, a hearing was held on the motion on June 25, 2014, and the Court granted the motion to extend the stay. Now Memo moves for the following: relief from the automatic stay; denial of the discharge of its debt; imposition of a constructive trust on the Debtor's property; and an order requiring sale of her cooperative apartment.

## DISCUSSION

**Relief from the automatic stay**

The automatic stay is one of the "fundamental debtor protections provided by the bankruptcy laws." H.R. REP. No. 95-595, 95th Cong., 1st Sess. 340 (1977); S. REP. No. 95-989, 95th Cong., 2nd Sess. 54-55 (1978). It puts a halt to all individual creditor collection efforts, providing the debtor with "breathing room" to attempt a reorganization or repayment of her debts, and terminates generally when property is no longer property of the estate, the case is closed or dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c). In the present case, Memo moves for relief from the automatic stay under the first two grounds of § 362(d), namely subsections (1) and (2).[1] The burden of proof is on the party opposing the relief, that is, the debtor or trustee. On the issue of the debtor's equity in property, the burden of proof falls on the moving party. 11 U.S.C. § 362(g).

---

[1] Sections 362 (d) (1), and (2) of the Bankruptcy Code provide, in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

    (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2)  with respect to a stay of an act against property under subsection (a) of this section, if-
        (A)  the debtor does not have an equity in such property; and
        (B)  such property is not necessary to an effective reorganization.

Memo cites no authority in support of its reliance on § 362(d)(2), which terminates the automatic stay of an "act against property" under § 362(d)(2). That section is invariably used by secured creditors who do have an interest in a debtor's property. Memo has no claim to a security interest in the Debtor's property, as its prospective judgment was never entered and never became a lien. As for the proposition that Memo has any rights to the Debtor's property under its Trust Agreement, even if Memo can establish that the Debtor was individually "Trustee" under its form agreement, it has not alleged that the Debtor has possession of any of its funds and that it should be able to reach those funds by relief from the stay. In fact, as discussed below, Memo's motion to impose a constructive trust on the Debtor's property fails to allege that there are proceeds of the sale of its money orders in the Debtor's possession.

Memo also moves for stay relief under § 362(d)(1), under which relief from the automatic stay will be granted for "cause." However, Memo's assertion that "cause" exists at this stage of the Debtor's chapter 13 case is without substance. The leading case in this Circuit for determining whether an unsecured creditor such as Memo should receive relief from the automatic stay at a particular point in a bankruptcy case to pursue its claim in a non-bankruptcy forum is *In re Sonnax Industries*, Inc., 907 F.2d 1280 (2nd Cir. 1990). There the Court identified the following factors to consider on such a motion:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial

4

> in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries*, Inc., 907 F.2d 1280 (1990). Not all factors are relevant in every case. *In re Mazzeo*, 167 F.3d 139,143 (1999).

In its motion, Memo invokes the first *Sonnax* factor, arguing that relief from the automatic stay would result in a partial or complete resolution of the issues. At this stage of the case, however, there are no issues that require resolution in litigation in the State court. The Debtor has not objected to Memo's claim in the amount of $48,499.33. If she does, the claim objection can be resolved. There is no basis for Memo's assumption that it should be able to enter its default judgment in the State court and obtain a lien. Rights are determined as of the petition date, and it would disadvantage all the Debtor's other creditors if Memo were able to convert its unsecured claim into secured status. *In re MarketXT Holding Corp.*, Adv. No. 08–1102 (ALG), 2008 WL 2164572 at *3 (Bankr. S.D.N.Y. May 2, 2008).

Memo additionally invokes the third *Sonnax* factor, which considers whether the non-bankruptcy proceeding involves the debtor as a fiduciary. In particular, Memo argues that Paulino was acting in a fiduciary capacity, the third *Sonnax* factor should apply, and relief from the automatic stay should be granted. For the proposition that the Debtor acted in a fiduciary capacity, it relies on the agreement between the parties and asserts that its form of contract created an express trust that gave rise to fiduciary responsibilities. As further discussed below, on the limited record before the Court, and without prejudice to Memo's right to pursue the issue, it is also possible that the relationship between the parties was that of debtor and creditor, not trustee and beneficiary.

5

Memo finally argues that the automatic stay should be lifted on the ground that the debtor's bankruptcy petition was not filed in good faith. It will be assumed that a debtor's lack of good faith in filing a bankruptcy petition can constitute "cause" under § 362(d)(1) that justifies relief from the automatic stay. *See Laguna Assocs. Ltd. Partnership v. Aetna Cas. & Sur. Co.*, 30 F.3d 734, 738, (6th Cir. 1994) (internal citations omitted); *In re 652 West 160th LLC.*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005); *In re Wallace*, No. 14–10437, 2014 WL 4248431 at *4 (Bankr. S.D.N.Y. July 24, 2014). In finding good faith, or its lack thereof, the Court has to engage in a fact-intensive analysis that takes into consideration the totality of the circumstances. *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992).

Over the years, a list of factors that can indicate the absence of good faith has been considered by the courts. In chapter 11 cases, this list has included the following:

1) the debtor has only one asset;
(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
(6) the debtor has little or no cash flow;
(7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
(8) the debtor has no employees.

*In re AMC Realty Corp.*, 270 B.R. 132 (Bankr. S.D.NY. 2001), citing *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1311 (internal citations omitted). Citing primarily chapter 11 cases, Memo argues that the automatic stay should be lifted because: 1) the debtor has only one asset, that is, the cooperative apartment at 7 West 92nd Street; 2) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of a "secured" creditor to enforce

6

its rights, as this took place in the eve of docketing a default judgment in New York County; 3) the debtor has little or no cash flow; and 4) the debtor is a repeat filer.

Even if chapter 11 cases were determinative, Memo has not established grounds for dismissal. The fact that the Debtor filed for bankruptcy before the default judgment's docketing in New York County cannot alone justify a finding of bad faith and the lifting of the automatic stay. Courts have repeatedly rejected the premise that the mere filing of a bankruptcy petition after the entry of an adverse judgment can on its own be the grounds for such relief. *See In re Kaplan Breslaw Ash*, LLC, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001) ("It is well settled, of course, that the filing of a bankruptcy petition on the eve of a foreclosure or eviction does not, by itself, establish a bad faith filing or "cause" for relief from the stay."), citing *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997); and *In re Éclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000)). In any event, Memo is not a secured creditor, and to the extent it can seek to share as an unsecured creditor in the Debtor's assets, it must share with all other unsecured creditors. Memo assumes that the Debtor has no future cash flow, but the record does not so indicate, and in any event it is an issue for consideration in connection with confirmation of her plan.

Moreover, this is a chapter 13 case, not a chapter 11 case, and grounds for dismissal for lack of good faith are narrow in chapter 13 cases. *In re Wallace*, 2014 WL 4248431 at *3. As discussed in *Wallace*,

> Under 11 U.S.C. § 1307(c) a court may dismiss a case "for cause." "[A]lthough 11 U.S.C. § 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can . . .dismiss the petition or convert the case under section 1307(c) if the debtor files [a] petition in bad faith." *In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). As the Court said in that case, "Bad faith has both an objective and subjective element; the proponent of bad faith must show 'both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with

7

> the spirit of the Bankruptcy Code.'" *In re Eatman*, 182 B.R. at 392, quoting *In re Love*, 957 F. 2d 1350, 1357 (7th Cir. 1992).  Another decision in this Court has held that "Dismissal based on lack of good faith is determined on an ad hoc basis and only in 'egregious cases' entailing concealed or misrepresented assets and/or sources of income, excessive and continued expenditures, lavish lifestyle, and intention to avoid singular debts incurred through fraud, misconduct, or gross negligence." *In re Lin*, 499 B.R. 430, 435-36 (Bankr. S.D.N.Y. 2013). Factors considered by the Lin court included   "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code." *In re Lin*, 499 B.R. at 436. Additionally, '[b]ankruptcy courts have found that bad faith exists where the '[d]ebtor's reorganization essentially involves the resolution of a two-party dispute.'" *In re Lin*, 499 B.R. at 437, quoting *In re Fonke*, 310 B.R. 809, 817 (Bankr. S.D.Tex. 2004).

2014 WL 4248431 at *4.  As in *Wallace*, "there is no reason to believe that the Debtor is not financially distressed."  2014 WL 4248431 at *5.  There is no reason to believe the Debtor has not been forthcoming with the Court, especially after she retained counsel.  This is not a case with a single creditor, and the petition lists numerous other creditors.  On the record to date, this appears to be a valid chapter 13 attempt at reorganization.  On the record, it is not an egregious case that would justify dismissal on bad faith grounds.

Moreover, Memo's lack of understanding of chapter 13 is confirmed by its request that this Court lift the stay so it can effect the sale of the Debtor's cooperative apartment.  The purpose of a chapter 13 case is to allow a debtor to retain assets and arrange repayment of debts. In this chapter 13 case, Memo will be able to share not in the Debtor's limited assets, but in her income earned over the next five years. Memo cannot stand the principles of chapter 13 on their head by asserting that it should be permitted to assert rights it does not have against the Debtor's assets through relief from the automatic stay.[2]

---

[2] It may also be noted that it is not clear from the record that there is any value to the Debtor's apartment.  Memo assumes there is substantial value, but the petition identifies it as an HFDC–subsidized apartment that has a value of $250.00.

8

Finally, Memo argues that the Debtor's "repeated" bankruptcy petition filings are an indication of bad faith, warranting lifting the automatic stay. As discussed above, a factor considered in the determination of good faith in a chapter 13 case is whether a petition was a repeat filing, and if so, the circumstances that surrounded it. The automatic stay can be the subject of abuse if a debtor repeatedly uses it as a vehicle to prevent creditors from exercising their State-law remedies. Such repeat filers usually undertake none of the actions necessary to complete a bankruptcy filing, leading eventually to a dismissal of the petition, only to refile upon the reinitiation of the creditor's pursuit of its State-law remedies. However, Paulino does not fit the profile of a "serial filer." She filed for her second bankruptcy on June 5, 2014, and her reasons for dismissing her first case were found to be adequate at the hearing on June 25, 2014. Since then she has prosecuted the instant case by filing a chapter 13 plan, tendering payments to the Trustee, and generally complying with the responsibilities of a debtor seeking chapter 13 relief.

Memo's motion for stay relief is denied.

**Discharge of debt**

Discharge of debts is central in bankruptcy law, as it advances the "fresh start" policy of the Bankruptcy Code. Nevertheless, a debt can be determined to be "non-dischargeable" for certain reasons under § 523(a), made applicable in chapter 13 cases where the debtor seeks a non-hardship discharge by virtue of § 1328(a).

In this case, Memo argues that its debt should be non-dischargeable because it is a debt for defalcation while the Debtor acted in a fiduciary capacity under § 523(a)(4), made applicable

in a chapter 13 case by § 1328(a)(2).[3] Memo, however, evades the fact that the issue of non-dischargeability of a debt must be the subject of an adversary proceeding (Fed. R. Bankr. P. 7003), filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). As far as the record shows, Memo has failed to file such a complaint. When Memo appeared at a hearing on August 7, 2014, the Court noted that it could treat Memo's motion as a complaint, and some courts have treated a creditor's motion to declare a debt non-dischargeable as if it were a complaint and have provided the creditor with the opportunity to cure its procedural shortcomings. *In re Dominguez*, 51 F.3d 1502, 1509 (9th Cir. 1995); *In re Sherf*, 135 B.R. 810, 814 (Bankr. S. D. Tex. 1991). At the August 7 hearing, however, the Debtor was not present and her counsel has now objected to the procedure. The

---

[3] Section 523 (a) (4), provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title, does not discharge an individual debtor from any debt-
>
> …
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

11 U.S.C. § 523(a)(4).

Section 1328(a)(2) provides that:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
>
> …
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

11 U.S.C. § 1328(a)(2).

10

Court has never considered the reasons for the creditor's mistake, and Memo has not explained why it should be relieved from the consequences of its failure to follow proper procedures.

An adversary proceeding is also the proper forum for determining the many issues raised by Memo's attempt to have its debt found to be nondischargeable, including the following.

The first issue is whether the Debtor was a fiduciary within the meaning of § 523(a)(4). The Bankruptcy Code does not contain a definition of the term "fiduciary" as used in § 523(a)(4). Its meaning is a matter of federal law, limiting that term's application to express or technical trusts. *In re Johnson*, 691 F.2d 249, 251-52, (1982), citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934), and *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202, 207, 11 L.Ed. 236 (1844). It is well accepted that "the broad, general definition of fiduciary – a relationship involving confidence, trust, and good faith -- is inapplicable in the dischargeability context." *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986); *see also Angelle v. Reed (In re Angelle)*, 610 F.2d, 1335, 1338-39 (5th Cir. 1980). Courts have held that the term has to be "narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998), citing *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 489 (Bankr. S.D.N.Y. 1987).

Memo cites only one case, *Global Express Money Orders, Inc. v. Davis (In re Davis)*, 262 B.R. 673 (E.D.Va. 2001), in support of the proposition that its form agreement created a trust rather than an agency, and that the Debtor personally became a trustee of a trust rather than an agent under an agency agreement. In *Davis*, there was no dispute that the agreement between the parties created an express trust, 262 B.R. at 683, and the Court found after a full trial that under Maryland law the debtor was liable as the manager of the business. The facts in this case

11

have not been established at trial, and the use of trust language in a contract may not be sufficient to establish a trust. For example, it has been held that the insertion in a commercial contract of the words, "holds in trust," or similar ones, may not establish the existence of a trust that gives rise to a fiduciary relationship. *See, e.g.*, *In re Lipke*, 54 B.R. 704, 705 (Bankr. W.D. Wisc. 1985); *In re Schultz*, 46 B.R., 880, 885 (Bankr. D. Nevada 1985); *In re Miles*, 5 B.R. 458 (Bankr. E.D. Virginia 1980). These cases distinguish between a trustee-beneficiary relationship, in which the trustee is the equitable owner, and a debtor-creditor relationship, in which a creditor has merely a claim against the debtor. Moreover, "[a]lthough federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the 'nature of a debtor's interest' in a given item." *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 349 (1992) (2nd Cir. 1992), quoting *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir. 1990). Memo does not cite New York law in support of its position on the trust issue.

Furthermore, the documentary record in this case is somewhat clouded by the documents. The signature lines required the Debtor to sign as an officer of Caribbean under the line "TRUSTEE." She then signed again on a line that reads: "Trustee Signature (Individual)." The question is raised whether there were two trustees, where the contract speaks of "TRUSTEE." It should be noted that there is no signature line for "Trustee Signature (Individual)" on any of the collateral documents. In any event, the record is further clouded by the fact that Memo had the Debtor sign a personal guaranty in which she guaranteed "Trustee's full performance of the Agreement…" In further proceedings, Memo will be able to explain how the Debtor could guaranty her own obligation if she was already personally liable as "Trustee."

Finally, in further proceedings Memo will have to establish that the Debtor was guilty of defalcation within the meaning of § 523(a)(4). *In re Davis*, cited by Memo, held that defalcation

12

included "the slightest misconduct, and it need not be intentional conduct…" 262 B.R. at 684. The Supreme Court rejected this definition of defalcation in 2013, when it significantly narrowed the scope that some courts had given to the term. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). There the Court held that "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the [defalcation] term requires an intentional wrong." *Id.* at 1759. Intentional wrong, the Court continued, is "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind set forth in the Model Penal Code." *Id.* at 1759. The Court quoted from the ALI Model Penal Code in finding that the actor's conduct must involve "a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. at 1760 (emphasis in original). In the present case, nothing in the record before this Court indicates whether or not Paulino was guilty of defalcation.

**Constructive Trust**

In the alternative, Memo argues, once again through a motion and not the required adversary proceeding, Fed. R. Bankr. P. 7001, that the Court should impose a constructive trust on the Debtor's property in Memo's favor. If Memo should seek to file a complaint seeking such relief, it can attempt to state a claim for a constructive trust but will have to overcome the interests of all other creditors in such attempt. The filing of a bankruptcy petition results automatically in the creation of an estate that includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The imposition of a constructive trust on property that would otherwise belong to the estate must be made with caution, as such an imposition will upset the priorities set forth by the Bankruptcy Code. *See Superintendent of Ins. for N.Y. v. Ochs (In re First Cent. Fin. Corp.),* 377 F.3d 209, 217-218 (2d Cir.2004); *Ades and Berg Grp. Investors v. Breeden (In re Ades and Berg Grp. Investors),* 550 F.3d 240, 243–45 (2d Cir.2008). Moreover, Memo will have to be able to trace the funds over

13

which it seeks to impose a constructive trust into the Debtor's property. *U.S. v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985). This may be difficult, as Memo has otherwise asserted that the Debtor has no assets other than her cooperative apartment. In any event, if Memo moves to file a complaint, it may seek to impose a constructive trust and the Debtor may of course respond.

## CONCLUSION

Memo's motion for relief from the automatic stay is denied. Memo may have 20 days to move to file a complaint seeking to deny the Debtor a discharge of her debt to Memo, and/or to impose a constructive trust. The motion must attach a proposed complaint. The case will be scheduled for a hearing on the Court's chapter 13 calendar on December 4, 2014 at 10:00 a.m. The parties may agree to adjourn any of the above dates. In the meantime, Memo's objections to confirmation of the Debtor's chapter 13 plan are reserved.

**IT IS SO ORDERED.**

Dated: New York, New York
       October 20, 2014

                                   **s/Allan L. Gropper**
                                   UNITED STATES BANKRUPTCY JUDGE

14